

FILED

MAY 2 0 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  KEEP A BREAST FOUNDATION,                CASE NO. 11-cv-0570 BEN (WMc)

12                               Plaintiff,   ORDER: (1) DENYING PLAINTIFF'S
         vs.                                  APPLICATION FOR TEMPORARY
13                                            RESTRAINING ORDER, AND (2)
                                              GRANTING APPLICATION FOR ORDER
14  THE SEVEN GROUP; et al.,                  TO SHOW CAUSE WHY PRELIMINARY
                                              INJUNCTION SHOULD NOT ISSUE
15                             Defendants.

16

17          Before the Court is Plaintiff's application ("Application") for a temporary restraining order that

18  temporarily restrains Defendants from using the marks "I LOVE BOOBIES" and "I (HEART)

19  BOOBIES," among other things.  Plaintiff also requests an order to show cause why a preliminary

20  injunction should not issue.  For the reasons set forth below, the Court DENIES Plaintiff's application

21  for a temporary restraining order, but GRANTS Plaintiff's application for an order to show cause why

22  a preliminary injunction should not issue.

23                                  **BACKGROUND**

24          Plaintiff is a non-profit organization created in 2004 to raise breast cancer awareness and to

25  promote the detection, prevention and treatment of breast cancer.  (Mot., Ex. S.)  Plaintiff uses "I

26  LOVE BOOBIES," "I (HEART) BOOBIES," and "HEART AND BREASTS," and related designs,

27  for marketing and promotional purposes, including the sale of apparel and accessories.  (*Id.*)  Plaintiff

28  recently obtained trademarks for "I (HEART) BOOBIES" and "HEART AND BREASTS," and their

1   related designs.  (Mot., Exs. A, C.)  Plaintiff also filed a trademark application for "I LOVE

2   BOOBIES," which is pending.  (*Id.*)

3        In 2010, Plaintiff started receiving inquiries from people confused about other marketing and

4   promotional efforts that used similar slogans and designs.  (Mot., Exs. D, G, N, P, R.)  Plaintiff did

5   not authorize these activities and decided to investigate.  Plaintiff discovered that Defendants were

6   using the "boobies" slogans and designs to sell their own apparel and accessories.  (Mot., Exs. B, D,

7   E, L, M, N, P.)  Plaintiff sent Defendants a cease-and-desist letter.  (Mot., Exs. E, F.)  Defendants

8   claim they ceased the allegedly infringing activity and, in fact, took affirmative steps to withdraw their

9   products from distribution.    (Mot., Exs. I, L, M; Shryock Decl., ¶¶ 3-9.)  Nonetheless, this suit

10  followed.

11       On March 22, 2011, Plaintiff filed a complaint in this Court, alleging trademark infringement,

12  trade dress infringement, trademark dilution, and unfair competition, among other things. (Docket No.

13  1.) On May 11, 2011, Plaintiff filed the Application currently before the Court. (Docket No. 7.)  On

14  May 16, 2011, as allowed by the Court, Defendants filed an opposition. (Docket No. 10.)

15                                        **DISCUSSION**

16       Federal Rule of Civil Procedure 65 outlines the procedure the Court must follow in deciding

17  whether to grant a temporary restraining order ("TRO").  See Fed. R. Civ. P. 65(b). Ordinarily before

18  issuing a TRO, the Court must hold a hearing or otherwise provide the opposing party with an

19  opportunity to respond.  In this case, Plaintiff provided notice of the Application to Defendants (Peck

20  Decl., ¶¶ 5-6), and the Court gave Defendants time to file an opposition, which they did.  Therefore,

21  the notice requirement is satisfied.

22       To obtain a TRO, similar to a preliminary injunction, Plaintiff must demonstrate: (1) a

23  likelihood of success on the merits; (2) a risk of irreparable harm absent injunctive relief; (3) the

24  balance of equities tip in favor of injunctive relief; and (4) injunctive relief is in the public interest.

25  *Winter v. Nat'l Res. Def. Counsel*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *Stuhlbarg Int'l Sales Co.*

26  *v. John D. Brush and Co.*, 240 F.3d 832, 839-40 (9th Cir. 2001).

27  **I.   LIKELIHOOD OF SUCCESS ON THE MERITS**

28       To prevail on a trademark infringement claim, Plaintiff must show (a) it has a valid, protectable

11CV0570

1   trademark interest, and (b) Defendants' use of the "boobies" slogans creates a likelihood of confusion

2   in the minds of the relevant consuming public, pursuant to *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341,

3   348-49 (9th Cir. 1979).

4                          **A. Protectable Trademark Interest**

5          Where, as here, a trademark infringement case involves a properly registered mark, a

6   presumption of validity and protectable interest applies and the burden of proving genericness lies with

7   the defendant.   15 U.S.C. § 1057(b) ("A certificate of registration of a mark... shall be prima facie

8   evidence of the validity of the registered mark..."); *Filipino Yellow Pages, Inc. v. Asian Journal

9   Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999).  Here, Plaintiff submitted copies of its registered

10  trademarks for "I (HEART) BOOBIES" and "HEART & BREASTS," as well as its pending

11  registration for "I LOVE BOOBIES." (Mot., Exs. A, C.)   Plaintiff also submitted evidence of its

12  continual use of these marks for the past few years.  (Mot., Ex. S.)  Defendants do not dispute the

13  validity of Plaintiff's trademarks and do not otherwise claim that Plaintiff lacks a protectable

14  trademark interest.  Therefore, the Court finds that this element is satisfied.

15                    **B. Likelihood of Confusion (*Sleekcraft* Factors)**

16         To evaluate the likelihood of confusion, the Court analyzes the following factors: (1) strength

17  of the mark; (2) relatedness or proximity of goods; (3) similarity in appearance, sound, and meaning;

18  (4) evidence of actual confusion; (5) marketing channels used; (6) degree of care likely to be exercised

19  by the consumer; (7) Defendants' intent in selecting the mark; and (8) likelihood of expansion of the

20  product lines. *Sleekcraft*, 599 F.2d at 352.  The Court need not address all of the factors. *Glow Indus.,

21  Inc. v. Lopez*, 252 F. Supp. 2d 962, 986 (C.D. Cal. 2002).

22         Here, Plaintiff submitted pictures and copies of emails and correspondence that show

23  Plaintiff's goods and Defendants' goods were substantially similar. (Mot., Exs. B, D, E, F, L, N, P,

24  R.) The evidence also shows Defendants marketed and sold their goods at events similar to Plaintiff.

25  (Mot., Exs. E, M, N, O, P, R, S.) In addition, Plaintiff received inquiries from people confused about

26  Plaintiff's products vis-a-vis Defendants' products. (Mot., Exs. D, G, N, O, P, R.) Indeed, Defendants

27  appear to admit that their activities caused confusion. (Mot., Ex. G.) Although some of Plaintiff's

28  submissions do not follow the Federal Rules of Evidence, in particular the rules on hearsay and

1   foundation, courts may consider such evidence for Rule 65 purposes, nonetheless. *See, e.g., Mulllins*
2   *v. City of New York*, 626 F.3d 47, 52 (2nd Cir. 2010); *Levi Strauss & Co. v. Sunrise Intern. Trading,*
3   *Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Given the strong similarity of the goods, which is undisputed,
4   the Court will consider them here. Therefore, Defendants' evidentiary objections are overruled.

5        In light of the above, the Court finds that Plaintiff has established a likelihood of confusion
6   and, thus, a likelihood of success on the merits.

7   **II.   IRREPARABLE HARM**

8        Plaintiff, however, must also demonstrate that the threat of harm is real, imminent and
9   significant, not just speculative or potential. *Winter*, 129 S. Ct. at 375-76. In trademark cases, courts
10  have found irreparable harm in the loss of control of a business' reputation, a loss of trade or a loss
11  of goodwill. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3rd Cir. 1990).
12  Here, Plaintiff introduced evidence of actual confusion in the market. (Mot, Ex. D, G, N, O, P, R.)
13  Defendants argue, however, that they have ceased the contested activities and have taken affirmative
14  steps to withdraw the allegedly infringing products from distribution. (Shryock Decl., ¶¶ 3-9.) In fact,
15  according to Defendants, these actions were taken prior to the filing of Plaintiff's Complaint. (*Id.*)
16  The evidence submitted by Plaintiff also supports this timeline. Therefore, the Court finds that the
17  threat of harm is merely potential and speculative, and not imminent or significant to warrant a TRO
18  at this time.

19  **III.   BALANCE OF EQUITIES AND PUBLIC INTEREST**

20       "In each case, a court must balance the competing claims of injury and must consider the effect
21  on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of*
22  *Gambell*, 480 U.S. 531, 542 (1987). Additionally, the Court must consider "whether there exists some
23  critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr. of*
24  *S. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009) (internal citation omitted).

25       As noted, Plaintiff has demonstrated harm arising from Defendants' activities. On the other
26  hand, an injunction precluding Defendants from selling the allegedly infringing goods would not cause
27  Defendants harm, as Defendants concede that they have switched their business efforts elsewhere.
28  (Shryock Decl., ¶¶ 3-9.) However, injunctions should only issue where necessary. *Winter*, 129 S.Ct.

11CV0570

1  at 376 ("A preliminary injunction is an extraordinary remedy never awarded as of right."). No public

2  interest is served by a court issuing needless injunctions. Here, as noted above, the record shows that

3  Defendants have ceased the allegedly infringing activity. Therefore, an injunction is not necessary.

4  Accordingly, the Court finds that the balance of equities and public interest weigh against the issuance

5  of a TRO.

6                                                **CONCLUSION**

7          In light of the above, the Court DENIES Plaintiff's application for a temporary restraining

8  order. Nevertheless, having considered the parties' papers and the record in this case, the Court finds

9  good cause exists to set a hearing for Defendants to show cause why a preliminary injunction should

10  not issue. Accordingly, the Court hereby orders Defendants to appear <u>on July 18, 2011 at 10:30 a.m.</u>

11  to show cause why a preliminary injunction should not be entered as requested in the Application. The

12  parties may file oppositions and replies in accordance with Civil Local Rule 7.1.

13  **IT IS SO ORDERED**.

14  Date: May/9, 2011

15                                              Hon. Roger T. Benitez, District Court Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

11CV0570