FILED
2011 JUL 19 AM 10: 19
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEEP A BREAST FOUNDATION,<br><br>　　　　　　　Plaintiff,<br>vs.<br>THE SEVEN GROUP, et al.,<br>　　　　　　　Defendants. | CASE NO. 11-cv-00570 BEN (WMc)<br><br>**ORDER DENYING PRELIMINARY INJUNCTION** |

On May 11, 2011, Plaintiff filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause ("Ex Parte Application"). (Docket No. 7.) On May 20, the Court denied Plaintiff's application for temporary restraining order and granted the Plaintiff's application for an order to show cause why a preliminary injunction should not issue ("Order to Show Cause"). (Docket No. 15.) For the reasons set forth below, the Court **DENIES** Plaintiff's request for a preliminary injunction.

## BACKGROUND

Plaintiff Keep a Breast Foundation is a non-profit organization created in 2004 to raise breast cancer awareness and to promote the detection, prevention and treatment of breast cancer. (Pl. Ex Parte App., Ex. S.) Plaintiff uses "I LOVE BOOBIES," "I (HEART) BOOBIES," and "HEART & BREASTS," and related designs for marketing and promotional purposes, including the sale of apparel and accessories. (*Id.*) Plaintiff recently obtained trademarks for "I (HEART) BOOBIES" and "HEART & BREASTS," and their related designs. (*Id.*, Exs. A, C.) Plaintiff also filed a trademark application for "I LOVE BOOBIES," which is pending. (*Id.*)

In 2010, Plaintiff started receiving inquiries from people confused about other marketing and promotional efforts that used similar slogans and designs. (*Id.*, Exs. D, G, N, P, R.) Plaintiff did not authorize these activities and decided to investigate. Plaintiff discovered that Defendants Adam Shryock and Pure Savings, LLC, doing business as The Seven Group, were using the "boobies" slogans and designs to sell their own apparel and accessories. (*Id.*, Exs. B, D, E, L, M, N, P.) Plaintiff's counsel sent Defendants a cease-and-desist letter. (*Id.*, Exs. E, F.) Defendants claim they ceased the allegedly infringing activity and, in fact, took affirmative steps to withdraw their products from distribution. (*Id.*, Exs. I, L, M; Shryock Decl. in Support of Opp. to Ex Parte App., ¶¶ 3–9.)

On March 22, 2011, Plaintiff filed a complaint in this Court, alleging trademark infringement, trade dress infringement, trademark dilution, and unfair competition, among other things. (Docket No. 1.) On May 11, Plaintiff filed the Ex Parte Application for Temporary Restraining Order and Order to Show Cause. (Docket No. 7.) On May 20, the Court denied Plaintiff's application for temporary restraining order and granted the Plaintiff's application for an order to show cause why a preliminary injunction should not issue. (Docket No. 15.) Defendants filed an opposition to the Order to Show Cause, and the Plaintiff filed a reply to Defendants' opposition. (Docket Nos. 19, 21.)

## DISCUSSION

To obtain a preliminary injunction, similar to a TRO, Plaintiff must demonstrate: (a) a likelihood of success on the merits, (b) a risk of irreparable harm absent injunctive relief, (c) that the balance of equities tip in favor of injunctive relief, and (d) that injunctive relief is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008). A preliminary injunction is an "extraordinary and drastic remedy" and "one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks omitted).

In denying Plaintiff's application for a temporary restraining order, the Court determined that (1) Plaintiff established a likelihood of success on the merits, (2) the threat of harm was merely potential and speculative, rather than imminent or significant, (3) the balance of equities weighed against issuing a TRO, and (4) injunctive relief would not be in the public interest. (Docket No. 15.) In their responses to the Order to Show Cause, the parties address only the second element that must

be met for a court to issue a preliminary injunction. Accordingly, this Order will only address the second element.

To meet this second element, Plaintiff must demonstrate that the threat of harm is real, imminent and significant, not just speculative or potential. *Winter*, 129 S. Ct. at 375–76. In trademark cases, courts have found irreparable harm in the loss of control of a business's reputation, a loss of trade, or a loss of goodwill. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990). As noted in the Order to Show Cause, Plaintiff has introduced evidence of actual confusion between Plaintiff's and Defendants' goods, suggesting a loss of brand control. (Pl. Ex Parte App., Exs. D, G, N, O, P, R.)[1]

On the other hand, Defendants have offered evidence demonstrating that since late March and early April, they have taken affirmative steps to prevent future potentially infringing activity. After Pure Savings received the cease-and-desist letter from Plaintiff's counsel, it stopped distributing any merchandise with any reference to "I (Heart) Boobies" to its sales representatives. (Shryock Decl. ¶ 5.) Pure Savings' sales representatives were notified that Pure Savings had begun a new promotional campaign called "Boobies Rock." (*Id.* ¶ 5, Ex. 2.) In addition, in March 2011, Shryock placed a disclaimer on Pure Savings' website, located at http://www.se7vengroup.com/services1.html, which stated that it was no longer selling "I (Heart) Boobies" merchandise. (*Id.* ¶ 4.) The disclaimer also requested that Pure Savings be notified of any merchants selling such merchandise in connection with Pure Savings, so that it could take steps to end such activity. (*Id.*) On March 21, 2011, Pure Savings both emailed and called its sales representatives, ordering them to stop selling merchandise with

---

[1] In support of their opposition to the Order to Show Cause, Defendants object to several of the exhibits Plaintiff submitted in support of its Ex Parte Application. Specifically, Defendants object to Exhibits A, B, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, and R. As noted in the Order to Show Cause, however, courts may consider otherwise inadmissible evidence for Rule 65 purposes. *See, e.g., Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) ("[H]earsay evidence may be considered by a district court in determining whether to grant a preliminary injunction."); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." (internal quotation marks ommitted)); *Sierra Club v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) ("[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence."). Therefore, Defendants' evidentiary objections are overruled.

reference to "I (Heart) Boobies." (*Id.* ¶ 6.) On April 4, 2011, Ms. Kelli Gazich emailed Pure Savings' sales representatives, instructing them to return all merchandise referencing "I Love Boobies" to Pure Savings, which Pure Savings is holding pending resolution of this action. (*Id.* ¶ 7, Ex. 3.) Such evidence is sufficient to demonstrate that Defendants have ceased their allegedly infringing conduct, and such conduct is not likely to recur in the future.

Plaintiff argues that "a defendant's commitment to stop the activities complained of does not obviate the need for a preliminary injunction." (Pl. Reply at 5.) Plaintiff is correct that a court may grant a preliminary injunction even when the defendant has voluntarily ceased the allegedly infringing activity. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). Doing so, however, is within the discretion of the court. *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 216 (7th Cir. 1982) ("It is within the discretion of the trial court to grant or deny an injunction against conduct which has ceased and is not likely to recur."). When seeking an injunction, "the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Here, Defendants have offered sufficient evidence that they have ceased their allegedly infringing conduct, and such conduct is not likely to recur in the future. *Cf. Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 5 (1st Cir. 1997) (finding that even though there was evidence of past infringing conduct, the court "cannot say that a defendant can never take actions and provide assurances sufficient, in the face of such evidence, to convince a court that she will not commit future violations").

Accordingly, the Court finds that the threat of harm is merely potential and speculative, and not imminent or significant as to warrant the issuance of a preliminary injunction. As this issue is dispositive, the parties' other arguments will not be addressed.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's request for a preliminary injunction.

**IT IS SO ORDERED.**

**DATED:** July 18, 2011

HON. ROGER T. BENITEZ
United States District Court Judge

- 5 -

11cv00570